**Norvell C. FARLEY, Petitioner,**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**No. 85SC490.**

Supreme Court of Colorado, En Banc.

Nov. 30, 1987.

Rehearing Denied Dec. 21, 1987.

victions of first degree sexual assault and second degree kidnapping.

## I.

The victim was approached by the defendant outside a Colorado Springs convenience store in the early morning on March 3, 1983. After several sexually suggestive remarks by the defendant, the victim attempted to get into her car. The defendant said "I guess I have to force you" and placed an unidentified object against the victim's back. The defendant ordered the victim to get into the car and move over to the passenger seat or he would "blow [her] away right here." The victim complied but tried to leave the car through the passenger door. The defendant grabbed the victim's hair and poked a finger in her eyes. After further fruitless resistance by the victim, the defendant drove the car into a residential neighborhood, forcing the victim to remove her pants and underwear along the way. The defendant parked the car and sexually assaulted the victim. Afterward, the defendant told the victim that he shouldn't have forced himself upon her and that he wanted to take her out for lunch to make up for doing so. Although the victim was not a student at Pikes Peak Community College, she told the defendant she was and agreed to meet him there for lunch. The defendant drove back to the convenience store, parked the car and left. The victim drove home and woke up her brother. The victim and her brother drove to their mother's house after she told him what had happened. The police were called from the victim's mother's house and an officer met the defendant at Pikes Peak Community College later that day and arrested him.

The defendant claimed the victim had consented to sexual intercourse. At trial, during cross-examination of the victim, defense counsel implied that the victim had asked the defendant for help in starting her car, that she knew the defendant did not have a weapon, that she never tried to escape from the defendant and that she had consented to sexual intercourse.

David F. Vela, Colorado State Public Defender, Pamela Stross Kenney, Marilyn S. Chappell, Deputy State Public Defenders, Denver, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., David R. Little, Asst. Atty. Gen., Appellate Section, Denver, for respondent.

MULLARKEY, Justice.

We granted certiorari to determine whether certain opinion testimony constituted rape trauma syndrome evidence and whether it was admissible in a criminal case. We decide that such testimony was not rape trauma syndrome evidence and was admissible under C.R.E. 701. Therefore, we affirm the decision of the court of appeals holding that such evidence was admissible and affirming the defendant's con-

Subsequent to the victim's testimony, the People called Candy Hurst, a counselor employed by the Victim Services Unit of the Colorado Springs Police Department. Hurst testified that she had counseled approximately thirty rape victims during her eighteen months with the Victim Services Unit and had interviewed the victim on the date of the assault. Hurst testified as to the victim's demeanor at the time of the interview. She stated that the victim was in a state of shock and was confused as to the chronological order of events related to the assault. She expressed her opinion that these reactions were typical of victims of sexual assault and that the victim's behavior was very consistent with being a rape victim. Hurst was not offered as an expert witness but she was cross-examined by defense counsel concerning her educational background and vocational training. Defense counsel's objections to Hurst's opinions were overruled.

The court of appeals held that, because the testimony in question involved observations of the victim unencumbered by scientific terminology and the witness did not opine that the victim had been raped, the testimony was not rape trauma syndrome evidence. *People v. Farley*, 712 P.2d 1116 (Colo.App.1985). Thus, the court upheld the trial court ruling admitting the testimony. The court of appeals relied upon C.R. E. 701 and C.R.E. 702 in so doing.

## II.

■ We agree with the decision of the court of appeals that the testimony in question did not constitute rape trauma syndrome evidence.[1] For the most part, this testimony was limited to observations of the victim's demeanor. The witness did not elaborate upon the different stages indicative of rape trauma syndrome and, indeed, did not use the term "rape trauma syndrome." While we recognize that certain testimony could easily amount to rape trauma syndrome evidence despite a failure to label it as such, we hold that this testimony

was not rape trauma syndrome evidence. *See State v. Huey*, 145 Ariz. 59, 699 P.2d 1290 (1985) (psychiatrist's testimony regarding rape victim's mental state and that her mental state was consistent with the ordeal she described held admissible as general observations of stress rather than rape trauma syndrome evidence).

There was some confusion in the trial court proceedings regarding Hurst's testimony. At an *in camera* session during the trial which occurred after Hurst testified, the trial court stated that it had accepted Hurst as an expert witness. The record does not bear out the court's recollection. Hurst was neither offered nor accepted as an expert. At no point was the jury advised that she was an expert. For those reasons, we have treated Hurst as a lay witness and hold that her testimony was lay opinion testimony admissible under C.R.E. 701.

■ The witness offered her opinion, based upon her prior experience with rape victims, that the victim's reactions were very consistent with being a rape victim. Under C.R.E. 701, a witness not testifying as an expert may present "opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." The sufficiency of evidence to establish the qualifications and knowledge of a witness to express an opinion based on physical facts she has observed is a question for the trial court, not subject to reversal unless clearly erroneous. *People v. Gallegos*, 644 P.2d 920 (Colo.1982); *Wise v. Hillman*, 625 P.2d 364 (Colo.1981); *Atencio v. Torres*, 153 Colo. 507, 385 P.2d 659 (1963).

*Gallegos* also involved a sexual assault and is very similar to the case now before us. In his cross-examination of the victim, the defense counsel in *Gallegos* brought out the fact that the victim had giggled at the preliminary hearing. From this, he implied that the victim giggled or laughed throughout the proceeding and that she

---

1. This case, therefore, differs from *People v. Hampton*, 746 P.2d 947 (Colo.1987), in which we held that certain expert testimony regarding

rape trauma syndrome was admissible. For an explanation of the syndrome, *see Hampton.*

treated the case as a joke. To rebut these inferences, the prosecution called a sheriff's investigator who had investigated the case and had observed the victim at the preliminary hearing. He testified that the victim's laughter was a nervous reaction, not a mockery of the proceeding, and that her demeanor was "very typical of a rape victim." 644 P.2d at 927. We held that the investigator's testimony was admissible under C.R.E. 701 and stated:

> Smith [the sheriff's investigator] observed the victim testifying at the preliminary hearing. At trial he stated a conclusion based on his sensory impressions from the preliminary hearing in conjunction with his prior knowledge and experience. That Smith based his conclusion in part on his experience as a police officer does not render his testimony inadmissible.
>
> Since defense counsel sought to impeach the victim's credibility through his questions on cross-examination, Smith's testimony, intended to rehabilitate her credibility, was appropriate, and did not constitute impermissible bolstering.

644 P.2d at 928 (citations omitted). *See also People v. Rubanowitz*, 673 P.2d 45 (Colo.App.1983) (the trial court erred in refusing to permit an attorney who represented the defendant at a previous trial to express his opinion, as a lay witness, on the question of whether the defendant suffered from an impaired mental condition at the time of his alleged commission of the offense).

The *Gallegos* analysis is applicable to this case and, accordingly, the judgment of the court of appeals is affirmed.

LOHR, J., specially concurs.

ERICKSON, J., dissents, and KIRSHBAUM, J., joins in the dissent.

LOHR, Justice, specially concurring:

I agree that the testimony of Candy Hurst was properly admitted by the trial court, but my reasons for that conclusion differ from those expressed in the majority opinion. The majority holds the testimony admissible as lay opinion testimony pursuant to C.R.E. 701. In my view, the testimony relating to the "several stages of emotional adjustment" victims go through after a traumatic experience went beyond the type of personal observation testimony admissible under C.R.E. 701 and *People v. Gallegos*, 644 P.2d 920 (Colo.1982). However, this testimony was admissible under C.R.E. 702, which permits a witness to express opinions regarding "scientific, technical, or other specialized knowledge [that] will assist the trier of fact" if the trial court concludes that she is "qualified as an expert by knowledge, skill, experience, training, or education,...."

The majority concludes that Hurst was never accepted as an expert, so C.R.E. 702 does not apply. Admittedly, the record is not clear as to exactly when Hurst was accepted as an expert. As I read the record, however, the trial court did accept Hurst as an expert. The People called Hurst as a witness and elicited her testimony as to how the victim's reaction compared to that of a typical rape victim. On cross-examination, defense counsel inquired into Hurst's training and background. The prosecutor objected on the ground that he didn't intend to offer her as an expert, but the court overruled the objection. Hurst testified that she had bachelor degrees in psychology and sociology and had received extensive training as part of her job. At this point, a brief discussion, which was not recorded, was held at the bench out of the hearing of the jury.

At the close of the prosecution's case, the court held, again out of the presence of the jury, that:

> with regard to the bearing and attitude of a rape victim, the Court does find that the witness [Hurst] does have special experience pursuant to the requirement of the Colorado Rules of Evidence and did accept that witness as an expert and specifically overruled the defendant's objection.

At the close of the defendant's case, the court restated its holding in chambers:

> the Court has further specifically found that with regard to the expertise as to demeanor of a rape victim that the wit-

nesses' [sic] testimony was acceptable as an expert because she testified that she counselled some thirty victims and therefore under the Colorado Rules of Evidence did have special experience and expertise and the testimony was properly admitted as expert testimony.

This court has stated that the determination of whether a witness qualifies as an expert is committed to the discretion of the trial court, and will not be disturbed on review unless that discretion has been abused. *People v. District Court*, 647 P.2d 1206, 1209 (Colo.1982). *Accord White v. People*, 175 Colo. 119, 123, 486 P.2d 4, 6 (1971); *Bridges v. Lintz*, 140 Colo. 582, 586, 346 P.2d 571, 573 (1959). On the basis of Hurst's testimony about her experience and training the court did not abuse its discretion. The fact that the trial court ruled on Hurst's qualifications as an expert out of the hearing of the jury did not prejudice the defendant. The substance of Hurst's testimony was properly limited to the scope of her expertise, which was the "demeanor" or "bearing and attitude" of a rape victim, and provided evidence that could have assisted the jury in evaluating the victim's behavior following the assault.

ERICKSON, Justice, dissenting:

I respectfully dissent. In my view, the testimony of the counselor, that the victim's behavior was consistent with that of a rape victim, was "rape trauma syndrome" evidence and was inadmissible. The trial court neither qualified the counselor as an expert on the rape trauma syndrome nor determined whether the counselor's rape trauma syndrome testimony was admissible under *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923).

The majority concludes that the counselor's testimony is not rape trauma syndrome evidence because it was limited to observations of the victim's demeanor and because the witness did not use the term "rape trauma syndrome" or elaborate upon the syndrome's different stages. In my view, the distinction elevates form over substance. The failure to use the phrase "rape trauma syndrome" should not permit lay witnesses to describe the typical symptoms of the rape trauma syndrome and to testify that the victim displays those symptoms.

"Rape trauma syndrome" refers to a recurring pattern of emotional distress in rape victims, which is manifested by certain identifiable symptoms. *People v. Hampton*, 746 P.2d 947 (Colo.1987). In the context of a rape trial, evidence that the victim is suffering from the symptoms constituting the rape trauma syndrome is used to prove that a rape occurred. *See People v. Hampton*, at 949 (admitted expert testimony identifying symptoms of the rape trauma syndrome and testimony of witnesses that victim suffered from the symptoms to prove that the victim was raped). In this case, Candy Hurst, a counselor in the Victim Services Unit of the Colorado Springs Police Department, identified the stages of emotional adjustment after a traumatic experience and testified, based on her training and interviews of some thirty other rape victims, that the victim had symptoms "consistent with being a rape victim." The testimony was offered to prove that the victim was raped and did not consent to sexual intercourse with the defendant. Because the counselor's testimony identified typical symptoms of the rape trauma syndrome to prove that the victim was raped, I find the conclusion unavoidable that the counselor's testimony was rape trauma syndrome evidence.

After concluding that the counselor's testimony was not rape trauma syndrome evidence, the majority concludes that the counselor's testimony was admissible under *People v. Gallegos*, 644 P.2d 920 (Colo. 1982). In *Gallegos*, the sexual assault victim giggled on the witness stand at the preliminary hearing. At trial, the defendant commented that the victim had laughed and giggled throughout the hearing and considered it a "big joke." To rebut the defendant's implication, the prosecution presented testimony of a police investigator that the victim had giggled because she was nervous. In *Gallegos*, we held that the admission of the testimony did not constitute plain error because a witness, who has personally observed the physical activi-

ty of another, may summarize his sensory impressions of that activity.

*Gallegos,* however, is factually distinguishable from *Farley.* In *Gallegos,* the officer did not require specialized knowledge of the symptoms displayed by rape victims to form his opinion. Any lay witness who had observed the victim's physical behavior at the preliminary hearing could have concluded that the victim had giggled because she was nervous. In contrast, the counselor in *Farley* based her conclusion upon her knowledge of the rape trauma syndrome. She testified to the several stages of emotional adjustment made by a rape victim following a sexual assault. Based upon her experience with rape victims, the victim's physical actions, and the answers to her questions, Hurst identified symptoms in the victim typically possessed by rape victims and opined that the victim's behavior was consistent with that of other rape victims.

In my view, the prejudicial effects of admitting rape trauma syndrome evidence under the facts of this case mandate reversal. Although she had had some past contacts with rape victims, Ms. Hurst was never qualified as an expert in the area of rape trauma syndrome. There was also no showing that the premises of the counselor's conclusions were admissible under the *Frye* test. *People v. Hampton,* 746 P.2d 947 (Colo.1987) (Erickson, J., dissenting); *see State v. Bressman,* 236 Kan. 296, 689 P.2d 901 (1984) (error to admit testimony of physician, who was not qualified as expert in area of rape trauma syndrome, that victim's emotional state was consistent with one of the three categories of typical rape victims and that the victim had been raped); *State v. Whitman,* 16 Ohio App.3d 246, 475 N.E.2d 486 (1984) (error to admit testimony of social worker, who was not qualified as expert in context of rape trauma syndrome, that victim suffered from symptoms of rape trauma syndrome). I, therefore, believe that Hurst's testimony was improperly admitted by the trial court.

The majority's broad interpretation of *Gallegos* and its holding in *Farley* will allow lay witnesses to testify to matters requiring specialized knowledge without being qualified as experts. In my view, the court of appeals decision should be reversed and the case remanded for a new trial.

I am authorized to say that Justice KIRSHBAUM joins in this dissent.