22CA1768 Peo v Longoria 08-15-2024 COLORADO COURT OF APPEALS Court of Appeals No. 22CA1768 Pueblo County District Court No. 20CR7 Honorable Amiel Markenson, Judge The People of the State of Colorado, Plaintiff-Appellee, v. Ysidro Derrick Longoria Jr., Defendant-Appellant. JUDGMENT AFFIRMED Division I Opinion by JUDGE J. JONES Welling and Schock, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced August 15, 2024 Philip J. Weiser, Attorney General, Jacob R. Lofgren, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee Casey J. Mulligan, Alternate Defense Counsel, Boulder, Colorado, for Defendant-Appellant 
 1 ¶ 1 Defendant, Ysidro Derrick Longoria Jr., appeals the district court’s judgment of conviction entered on jury verdicts finding him guilty of first degree burglary and attempted sexual assault.
1 We affirm. I. Background ¶ 2 Late one night, Longoria climbed into the victim’s apartment through a window. The victim and her children were asleep. The victim woke up, saw Longoria (whom she didn’t know), and started to ask him who he was. Before she could finish the sentence, Longoria hit her in the face, knocking her unconscious. When the victim awoke, Longoria was on top of her in her bed. Longoria spread the victim’s legs apart with his hands “all the way up” her inner thighs and used his own legs to keep the victim from closing hers. The victim said, “Oh, my God, you’re going to rape me.” Longoria said, “Sshhh.” 1 Longoria was also found guilty of second degree assault, but he doesn’t challenge his conviction for that offense. And the jury found Longoria guilty of a crime of violence sentence enhancer in connection with the attempted sexual assault charge, but Longoria doesn’t raise any separate challenge to that verdict: it stands or falls based on the outcome of his challenges to the first degree burglary and attempted sexual assault charges. 
 2 ¶ 3 When the victim tried to fight Longoria off, he smothered her with a hand on her face and punched her. He also pressed his forearm down on her neck, using his bodyweight. The victim managed to roll off the bed onto the floor. Longoria punched and kicked the victim, who yelled for help. This woke up the victim’s oldest son, who started yelling. Longoria fled. ¶ 4 The People charged Longoria with second degree assault, first degree burglary, attempted sexual assault, and a crime of violence sentence enhancer. The first degree burglary charge alleged that Longoria intended to commit sexual assault when he broke into the apartment. See § 18-4-202(1), C.R.S. 2024 (an element of first degree burglary is that the defendant intended to commit a crime when he unlawfully entered or remained in an occupied structure). ¶ 5 One jury found Longoria guilty of second degree assault, and a later jury found him guilty of the other charges. II. Discussion ¶ 6 Longoria contends that (1) the district court plainly erred by failing to define certain terms used in the instruction defining “sexual penetration” and (2) the evidence was insufficient to support the convictions for first degree burglary and attempted sexual 
 3 assault (and therefore the related jury finding of a sentence enhancer) because there was insufficient evidence of an intent or attempt to commit sexual assault. We address, and reject, these contentions in turn. A. Definition of Terms ¶ 7 The court’s instruction to the jury on the elements of attempted sexual assault included as an element that Longoria “engaged in conduct constituting a substantial step toward sexual assault.” It separately instructed the jury on the elements of sexual assault, one of which was “inflict[ing] sexual intrusion or penetration on a person.” And the court separately instructed the jury on the meanings of sexual intrusion and sexual penetration as follows: “SEXUAL INTRUSION” means any intrusion, however slight, by an object or any part of a person’s body, except the mouth, tongue, or penis, into the genital or anal opening of another person’s body if that sexual intrusion can reasonably be construed as being for the purpose of sexual arousal, gratification, or abuse. “SEXUAL PENETRATION” means sexual intercourse, cunnilingus, fellatio, analingus, or anal intercourse. Emission need not be proved as an element of sexual penetration. Any 
 4 penetration during sexual intercourse, cunnilingus, fellatio, analingus, or anal intercourse, however slight, is sufficient. Longoria’s attorney didn’t object to these instructions, nor did he ask the court to define for the jury any term used in these instructions. ¶ 8 On appeal, however, Longoria contends that the district court was required to provide the jury with definitions of “cunnilingus,” “fellatio,” “analingus,” and “anal intercourse.” 1. Standard of Review ¶ 9 To determine whether the district court erred, we will review Longoria’s contention de novo. See Townsend v. People, 252 P.3d 1108, 1111 (Colo. 2011) (“[W]e review legal conclusions implicit in jury instructions de novo . . . .”); People v. Maloy, 2020 COA 71, ¶ 54 (a court abuses its discretion in formulating jury instructions if, among other things, it misapplies the law). ¶ 10 Because Longoria’s attorney didn’t preserve this issue, if we determine that the court erred, we will reverse only if Longoria establishes that the error was plain. People v. Sepulveda, 65 P.3d 1002, 1006 (Colo. 2003); People v. Zadra, 2013 COA 140, ¶ 50, aff’d, 2017 CO 18. This means that Longoria must show that any 
 5 error was obvious and “so undermined the fundamental fairness of the trial . . . as to cast serious doubt on the reliability of the judgment of conviction.” Hagos v. People, 2012 CO 63, ¶ 14 (quoting People v. Miller, 113 P.3d 743, 750 (Colo. 2005)). In the context of jury instructions specifically, this means that Longoria must show “not only that the instruction affected a substantial right, but also that the record reveals a reasonable possibility that the error contributed to his conviction.” People v. Garcia, 28 P.3d 340, 344 (Colo. 2001) (quoting Bogdanov v. People, 941 P.2d 247, 255-56 (Colo. 1997)). 2. Analysis ¶ 11 The premise of Longoria’s contention is that the terms “cunnilingus,” “fellatio,” “analingus,” and “anal intercourse” “have acquired technical or particular meanings.” Therefore, his argument continues, under Griego v. People, 19 P.3d 1, 7 (Colo. 2001), the court was required to instruct the jury on those meanings. We reject Longoria’s premise. ¶ 12 In support of his premise, Longoria relies on definitions of three of these terms — “cunnilingus,” “fellatio,” and “anal intercourse” — in section 18-7-401, C.R.S. 2024; comments in the 
 6 Model Criminal Jury Instructions; section 2-4-101, C.R.S. 2024; and People v. Fell, 832 P.2d 1015 (Colo. App. 1991). None of these authorities support Longoria’s position. ¶ 13 The definitions of three of the relevant terms in section 18-7-
401 expressly apply only to child prostitution charges under part 4 of article 7 of title 18. See also § 18-7-201, C.R.S. 2024 (defining the same three terms the same way for purposes of section 2 of article 7 of title 18, relating to prostitution offenses). Sexual assault isn’t such a charge: it is proscribed by section 18-3-402, C.R.S. 2024. ¶ 14 But more importantly, Longoria hasn’t argued, much less shown, that the statutory definitions of these terms in section 18-7-
401 differ in any meaningful sense from their commonly understood meanings. And we fail to see any such difference. ¶ 15 For instance, section 18-7-401(3) defines “cunnilingus” as “any act of oral stimulation of the vulva or clitoris.” A common dictionary definition is “stimulation of the vulva or clitoris with the lips or tongue.” Webster’s Third New International Dictionary 554 (2002). Section 18-7-401(4) defines “fellatio” as “any act of oral stimulation of the penis.” Webster’s defines it as “the practice of 
 7 obtaining sexual satisfaction by oral stimulation of the penis.” Webster’s at 836; see Veith v. People, 2017 CO 19, ¶ 15 (a court may consult recognized dictionaries to determine a term’s ordinary meaning). ¶ 16 The same can be said for the comments in the Model Jury Instructions, which include definitions of the relevant terms. Indeed, Longoria concedes that the definition of “analingus” in those comments simply tracks a dictionary definition. And as for the other three terms, the comments merely note statutory definitions, none of which differ materially from commonly understood meanings. See COLJI-Crim. F:343 cmts. 2 & 3 (2023) (cross-referencing COLJI-Crim. F:16, F:81, and F:147). Moreover, no relevant model instruction says that these definitions must be given to a jury. ¶ 17 As Longoria points out, section 2-4-101 says that “[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly.” This is a legislatively mandated canon of statutory construction. It doesn’t say that every legislative definition is “a technical or particular meaning” of a term, only that if such a 
 8 definition differs from common understanding — that is, has been given a technical or particular meaning by statute — that meaning should guide interpretation of a statute to which the definition applies. As discussed, none of the statutory definitions at issue give any of the terms a meaning different from the commonly understood meaning. ¶ 18 Longoria’s reliance on Fell fares no better. In Fell, the jury sent a note to the court asking for clarification of the definition of “sexual penetration” — specifically, “Does penetration by fingers qualify under this definition?” 832 P.2d at 1019. The division held that the district court erred by refusing to answer that question directly because the jury had affirmatively indicated a potential misunderstanding of the term. Id. In the course of resolving the issue, the court said in dictum that the terms “fellatio,” “cunnilingus,” and “anilingus” “carry specific meanings that many jurors may not understand.” Id. (emphasis added). ¶ 19 Unlike in Fell, the jury in this case didn’t indicate any uncertainty as to any term in the definitional instruction. And in any event, the division didn’t say that a court always must give 
 9 definitions of these terms to a jury. Longoria doesn’t cite any case holding that the court must do so, and we haven’t found one. ¶ 20 In sum, we aren’t persuaded that these terms are beyond the understanding of ordinary jurors. Nor are we persuaded that they have acquired any technical meaning — by statute or otherwise — different from their commonly understood meanings. Therefore, the court didn’t err by failing to sua sponte define these terms for the jury. See People v. Payne, 2019 COA 167, ¶ 18 (“A definitional instruction is not required for a term or phrase familiar to a reasonable person of common intelligence, especially when the term’s ‘meaning is not so technical or mysterious as to create confusion in the jurors’ minds.’” (quoting People v. Thoro Prods. Co., 45 P.3d 737, 745 (Colo. App. 2001))); see also Saucedo v. State, No. 11-22-00227-CR, 2024 WL 1447285, at *3 (Tex. App. Apr. 4, 2024) (unpublished opinion) (where a term has a commonly understood meaning, and that meaning is similar to the statutory definition of the term, the court need not define that term for the jury); State v. Valles, 780 P.2d 1049, 1054-55 (Ariz. Ct. App. 1989) (same); State v. Barnett, 691 P.2d 683, 686 (Ariz. 1984) (same); People v. Peebles, 465 N.E.2d 539, 543 (Ill. App. Ct. 1984) (same); Rizzuto v. State, 
 10 407 A.2d 225, 225-26 (Del. 1979) (where statutory definition of “sexual contact” tracked commonly understood meaning, court wasn’t required to define the term for the jury); People v. Robideau, 289 N.W.2d 846, 849-50 (Mich. Ct. App. 1980) (“The term fellatio is one generally understood by laymen, and possesses no distinct legal definition.”) (emphasis added), aff’d, 355 N.W.2d 592, 605 n.9 (Mich. 1984), overruled on other grounds by People v. Smith, 733 N.W.2d 351 (Mich. 2007). ¶ 21 As well, we aren’t persuaded that any error should have been obvious to the district court. Again, no statute says and no case holds that these terms must be defined for a jury. See People v. Crabtree, 2024 CO 40M, ¶ 42 (“[T]o be deemed plain, an error must contravene a clear statutory command, a well-settled legal principle, or established Colorado case law.”). ¶ 22 Lastly, any error didn’t so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. For one thing, Longoria didn’t base his defense on a challenge to his alleged acts, but rather on a theory that he lacked the requisite intent. For another, the evidence of Longoria’s guilt was quite strong. Longoria came into the victim’s 
 11 apartment through a window. After knocking her unconscious, Longoria straddled the victim (who was wearing only a t-shirt and underwear) on her bed, spread her legs apart with his hands (on the upper part of her inner thighs), and used his legs to keep the victim’s legs apart. When the victim regained consciousness and said, “Oh, my God, you’re going to rape me,” Longoria only responded by making a shushing sound. These acts were “strongly corroborative of the firmness of [Longoria’s] purpose to complete the commission of the offense” of sexual assault. See § 18-2-101(1), C.R.S. 2024 (defining criminal attempt); see also People v. Sloan, 2024 COA 52M, ¶¶ 39, 50 (we consider the strength of the evidence in assessing the third prong of the plain error test).
2 Indeed, Longoria’s defense was remarkably weak. His attorney asserted (without evidence) that Longoria came into the victim’s house for some unexplained reason without any intent to do anything. That defense utterly failed to engage with the evidence of his actions in the apartment, none of which Longoria’s counsel meaningfully contested. 2 The victim had visible injuries following the assault, as defense counsel conceded. 
 12 B. Sufficiency of the Evidence ¶ 23 Longoria contends that the evidence of a “substantial step” toward committing sexual assault was insufficient, rendering his convictions for attempted sexual assault and, hence, first degree burglary unsustainable. He relies on a list of acts that he did not do — acts that would have constituted substantial steps. But as we have already determined, the acts Longoria did do were strongly corroborative of his purpose to commit sexual assault. That he didn’t commit other acts that also would have been strongly corroborative of that purpose is of no consequence. So, viewing the evidence in the light most favorable to the verdicts, we conclude that the quantity and quality of the relevant evidence supports a fair-minded jury’s finding that Longoria took a substantial step toward committing sexual assault. See People v. Perez, 2016 CO 12, ¶¶ 24-25; People v. Woodyard, 2023 COA 78, ¶ 44. III. Disposition ¶ 24 The judgment is affirmed. JUDGE WELLING and JUDGE SCHOCK concur.